CabutheRs, J.,
delivered the opinion of the court.
This is an action on the case, brought by the defendants in error, upon the warranty of soundness of a negro girl named Maria, made in an unsealed instrument on the 12th day of March, 1852, by the plaintiff in error.
The slave was bought for the southern market, to which she was taken and sold, but returned for unsoundness. A claim is also made for keeping, nursing, medical expenses, &c.
The law on the subject of damages is laid down in the charge to be, “that the measure of damages is the difference between what the plaintiffs gave for the slave, and what she was worth in her unsound state, together with such reasonable doctor’s bills as the plaintiffs had incurred in consequence of that unsoundness; to which might be added the necessary expense of taking her to the south and bringing her back again, provided the proof showed that the defendant knew that the plaintiffs purchased her with a view of taking her to the south to sell.”
The general rule laid down by his Honor is not exactly correct. The difference between what is given for *183 the property, and what it is worth, in its unsound state, is not always the measure of damages. The amount paid is one circumstance, and a very strong one, to fix the value of the thing sold, under the supposition that it is sound, hut the purchaser may have made a good bargain, and is entitled to the benefit of it. The rule is, that the damages consist of the difference between the value of the property at the time and place of sale, if sound, and its value in its unsound state, where the action is upon the contract of warranty. Allen vs. Anderson, 3 Humph., 583. To this may be added expenses of beeping, nursing and medical attention under proper circumstances.
But this is not referred to in the argument. The objection is confined to the latter part of the charge, which allows doctor’s bills and the expenses of traveling to be included in the damages. We are not aware that this precise question has ever been decided in this State.
It came before the Supreme Court of South Carolina in the case of Seibles vs. Blackwell, 1 McMullen, 56-8; and it was decided that no expenses attending the property could be recovered, unless there had been an offer to restore the possession to the vendor before they were incurred. This is sustained by reference to the case of Carwell vs. Coan, 2 Camp., 82, where the doctrine is thus laid down by Lord Mansfield: “unless the defendant refuse to take back the horse, the plaintiff cannot complain that the expenses of the keep is necessarily thrown upon him. By not offering to return the horse before bringing the action, he intimates that he still considers the animal his own, and he therefore, ought to maintain him at his own expense.”
*184 The same doctrine is to be found in Chitty on Con., 266, sustained by reference to other authorities.
It is insisted that these rules may apply well enough to horses and other animals, but in cases of slaves there should be a distinction. It is difficult to see upon what ground it can be made. The doctrine seems to us to be reasonable in its application to slaves, as was done in the case referred to in South Carolina, as well as to any other property which it is expensive to keep.
The action is upon and in affirmance of the contract, not for any fraud in the sale which would rescind it. The vendor only binds himself for soundness, and that failing, he is liable to make it good in damages. He may choose to do so without further expense, if notified of the fact, and have the offer to take back the property. The purchaser has it in his power to give him this opportunity, or keep the slave himself, and resort to his action on the warranty to recover the difference in value. If he prefers to hold on to the slave and leave the contract open, he must be at all expenses himself; he has made his election. The vendor should not be forced to pay expenses until he has had the opportunity to take back the property to avoid them by supplying every thing necessary himself. If the slave were offered to the vendor he would have the election to receive him and regain the property in him by paying or becoming liable to pay the consideration; or refuse to take him back, and become liable for the difference in value between a sound and an unsound article, with all expenses of keep and attention. It would seem unreasonable to force the expenses upon him, when he had no power to avoid them by canceling the sale and regaining the property.
*185 It is the duty of the vendee to give notice to the vendor of the unsoundness, so soon as it is discovered, and offer back the property if he is dissatisfied with it. If he fail to do this he can only recover in a suit upon the contract, according to the rule before stated.
Ve know of no principle that would authorise the expenses of the slave to and from the south, to he recovered in an action on a general warranty of soundness.
On these two points we think his Honor erred. But there is very great difficulty in laying down any rule on this subject, which will not produce hardship and apparent injustice in some cases. We think, however, that those we have stated above are least exceptionable and most in conformity with the authorities. We are referred to no authorities in conflict with them.
Exception is also taken to that part of the charge in which the judge explained what the physicians meant by the seeds of disease being - planted in the system. Perhaps this was a question belonging to the science of medicine, and would he more properly explained by medical men, in their examination as witnesses, rather than a judicial one to be expounded by the Court; but if the explanation given was the true one, no injury was done ✓to either party. Tet, it would be better to leave the meaning of witnesses by. the language they use, to the jury.
The judgment will he reversed, and the cause remanded for a new trial.